UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID RAY SIMMONS,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

Defendants.

Case No. 2:26-cv-00347-TLN-CSK (PS)

ORDER AND FINDINGS AND RECOMMENDATIONS

(ECF No. 9)

Pending before the Court is Defendant BMO Bank N.A.'s motion to dismiss the cause of action alleged against Defendant in Plaintiff David Ray Simmons's Complaint.[1] (ECF No. 9.) Plaintiff is appearing without counsel. Pursuant to Local Rule 230(g), the Court submits the motion upon the record and briefs on file.

For the reasons that follow, the Court RECOMMENDS granting Defendant BMO Bank N.A.'s motion to dismiss with leave for Plaintiff to amend his Complaint.

/ / /

/ / /

/ / /

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

# I. BACKGROUND

## A. Factual Allegations[2]

Plaintiff brings this action against Defendants Experian Information Solutions, Inc. ("Experian") and BMO Bank N.A. ("BMO") alleging the following violations of the Fair Credit Reporting Act: (1) 15 U.S.C. § 1681i against Defendant Experian, based on a failure to reasonably reinvestigate disputed information; and (2) 15 U.S.C. § 1681s-2(b) against Defendant BMO, based on a failure to reasonably investigate disputed reporting inaccuracies. *See* Compl. at 5-7 (ECF No. 1). Plaintiff seeks declaratory and injunctive relief and costs. *Id.* at 7.

Plaintiff alleges that, upon reviewing a credit report from Defendant Experian in December 2025, he discovered that the report contained "a tradeline reported by Defendant BMO . . . . as an installment account for 'Recreational Merchandise,' opened on or about June 1, 2015."[3] Compl. ¶ 8. Plaintiff alleges this tradeline is reported with the terms "'Collection/Chargeoff,'[4] an 'involuntary repossession' notation, [and] a past due balance of $57,265.00." Compl. ¶ 9. Plaintiff alleges the tradeline purports a "Date of Last Payment" of December 18, 2024, even though the account was reported by Defendant BMO as charged off on April 12, 2023, which Plaintiff asserts is contradictory because "[u]nder universally accepted accounting and credit reporting principles, an

---

[2] These facts primarily derive from the complaint (ECF No. 1), which are construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

[3] "A tradeline is a term used by credit reporting agencies to describe credit accounts listed on your credit report. For each account you have, there is a separate tradeline, which includes information about the creditor and the debt." *Leslie v. Experian Info. Sols., Inc.*, 2023 WL 5000770, at *1 (D. Haw. Aug. 4, 2023) (quoting Experian, "What are Tradelines and How Do They Affect You?," https://www.experian.com/blogs/ask-experian/what-are-tradelines/ (last visited July 13, 2026)).

[4] "'Charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Hickson v. Experian Info. Sols., Inc.*, 2023 WL 2734795, at *1 (D. Or. Mar. 31, 2023) (citing Black's Law Dictionary (11th ed. 2019)).

account cannot receive a payment after it has been charged off." *Id.* ¶¶ 10-11. Plaintiff further alleges that reporting the tradeline "as a collectible charge-off balance, without disclosure of any adjudicated liability or supporting documentation, is misleading and materially inaccurate." *Id.* ¶ 12.

Between January and February 2026, Plaintiff submitted written disputes to Defendant Experian concerning the tradeline reported by Defendant BMO, specifying "the internal date contradiction" and "challeng[ing] the account's verifiability due to the lack of underlying documentation." *Id.* ¶ 13. Plaintiff alleges Defendant Experian responded that the tradeline "had been 'verified' and would remain on his file." *Id.* ¶ 14. The Complaint also attaches a letter from Defendant BMO stating that "the Bank reviewed the account records, recovery documentation and credit reporting history" and that "the tradeline reported to Experian reflects the balance and status consistent with the Bank records." *Id.*, Exh. B. Plaintiff alleges his FICO score reported by Defendant Experian is 532, whereas his FICO score reported by Equifax is 810, attributing the lower score to the alleged inaccuracies in Defendant Experian's reporting of the BMO tradeline. *Id.* ¶ 19, Exh. A, Exh. C.

**B. Procedural Posture**

Plaintiff initiated this action on February 9, 2026. (ECF No. 1.) Defendant BMO filed the operative motion to dismiss on March 9, 2026. (ECF No. 9.) On March 27, 2026, Defendant BMO Bank N.A. filed a reply indicating that it had received an opposition brief from Plaintiff. Def. Reply (ECF No. 14). On April 8, 2026, the Court vacated the hearing on the motion to dismiss and ordered Plaintiff to file the opposition he had sent to Defendant. 4/8/2026 Order (ECF No. 15). Plaintiff then filed an opposition on April 16, 2026. (ECF Nos. 18, 19.) Defendant filed a declaration stating that the opposition Plaintiff filed with the Court was not the same opposition that Plaintiff had served on Defendant on March 23, 2026. Amended Declaration of Mancy Pendergrass ¶ 4 (ECF No. 22); (ECF No. 22-1).

/ / /

## II. LEGAL STANDARDS

### A. Rule 8, Pro Se Pleadings, Construction and Amendment

Pro se pleadings are to be liberally construed and afforded the benefit of any doubt. *Chambers v. Herrera*, 78 F.4th 1100, 1104 (9th Cir. 2023). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). To give fair notice of the claims and the grounds on which they rest, a plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Upon dismissal of any claims, the court must tell a pro se plaintiff of a pleading's deficiencies and provide an opportunity to cure such defects. *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016). However, if amendment would be futile, leave to amend does not need to be provided. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023).

To determine the propriety of a dismissal motion, the court may not consider facts raised outside the complaint (such as in an opposition brief), but it may consider such facts when deciding whether to grant leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

### B. Failure to State a Claim under Rule 12(b)(6)

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if

it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

### C. Fair Credit Reporting Act Claims

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, regulates credit reporting agencies to guarantee that consumer information is assembled, evaluated, and disseminated with "fairness, impartiality, and a respect for the consumer's right to privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting 15 U.S.C. § 1681(a)(4)). The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). In addition to regulating credit reporting agencies, the "FCRA imposes duties on the credit furnishers, which are the sources that provide information to credit reporting agencies, to ensure accurate credit reporting." *Arnold v. Bay Finance Co.*, 2023 WL 2088460, at *5 (E.D. Cal. Feb. 17, 2023).

## III. DISCUSSION

Defendant BMO moves to dismiss Plaintiff's § 1681s-2(b) claim against it for failure to state a claim.[5] Def. Mot. (ECF No. 9). The Court first turns to the issue of Plaintiff's multiple oppositions, then to Plaintiff's constitutional standing.

/ / /

---

[5] Although the motion to dismiss claims that Defendant BMO was not properly served with the Complaint, Defendant does not argue for dismissal under Rule 12(b)(5) for insufficient service of process. *See* Def. Mot. at 2, 6 n.1 (ECF No. 9). Defendant BMO accordingly waives this argument. *See* Fed. R. Civ. P. 12(h)(1)(A).

**A. Plaintiff's Oppositions**

According to Defendant, the opposition filed by Plaintiff on April 8, 2026 is not the same opposition Plaintiff served on Defendant by email on March 23, 2026, which Defendant relied on in preparing its reply. Pendergrass Decl. ¶ 4; *compare* Pendergrass Decl., Exh. A (ECF No. 22-1), *with* Pl. Opp'n (ECF Nos. 18, 19).[6] Upon review of the record, the Court agrees. When the Court's April 8, 2026 Order directed Plaintiff to file his opposition, it expressly referred to the opposition Plaintiff served on Defendant but neglected to file. 4/8/2026 Order (ECF No. 15). The Court did not grant leave for Plaintiff to file an amended or supplemental opposition brief different from the one he served on Defendant; nor did Plaintiff request such leave. Accordingly, and to prevent prejudice to Defendant due to having relied on an earlier opposition brief, Plaintiff's opposition filed with the Court at ECF Nos. 18 and 19 is DISREGARDED. The Clerk of Court is ordered to re-file Plaintiff's opposition served on Defendant at ECF No. 22-1 as a separate docket entry. Plaintiff is reminded that although the Court liberally construes filings by parties who are not represented by counsel, pro se parties are still required to comply with the Federal Rules, the court's Local Rules and all orders of the Court, including requirements to timely file papers with the Court and serve them on the parties.

**B. Standing**

Although Defendant BMO did not specifically challenge Plaintiff's Article III standing in its motion, "federal courts have a duty to raise, sua sponte, questions of standing before addressing the merits' of any claim." *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023)). Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the

[6] Plaintiff's opposition at ECF Nos. 18 and 19 appear identical, except that the later-filed opposition contains certificates of service. (*See* ECF No. 19 at 4-6.)

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339.

Plaintiff has not shown he has suffered an injury in fact. Apart from the conclusory allegations that "Defendants' inaccurate reporting[] impair[s] Plaintiff's creditworthiness, increase[es] the cost of credit, and caus[es] concrete financial and reputational injury," the only harm the Complaint alleges is that Plaintiff has a lower FICO score reported by Experian compared to his FICO scores reported by Equifax and TransUnion. Compl. ¶¶ 19-20. The Court recognizes that district courts are split on whether a lower credit score, standing alone, establishes a concrete injury for FCRA claims. *Compare Del Llano v. Vivint Solar Inc.*, 2018 WL 656094, at *7 (S.D. Cal. Feb. 1, 2018) (recognizing lack of consensus but holding that a "drop in Plaintiff's credit score is not an articulated concrete harm"), *and Lewis v. Old Navy*, 2024 WL 98293, at *3 (S.D.N.Y. Jan. 9, 2024) (collecting Second Circuit cases), *with Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 59 (E.D. Va. 2018) (collecting cases holding that "a reduction in credit score constitutes an injury in fact").

However, in an unpublished opinion, the Ninth Circuit held that plaintiffs lacked Article III standing to assert FCRA claims where they "have not alleged that they tried to enter any financial transaction for which their credit reports or scores were viewed at all, or that they plan to imminently do so, let alone that the alleged inaccuracies in their credit reports would make a difference to such a transaction." *Jaras v. Equifax Inc.*, 766 F. App'x 492, 494-95 (9th Cir. 2019). Here, Plaintiff has not alleged that his lower Experian credit score was shared with specific third parties or that it affected any identified past or future transactions or lending decisions. Accordingly, Plaintiff's sole allegation of harm in the form of a reduced credit score does not sufficiently establish standing under Article III. *See Gadomski v. Patelco Credit Union*, 2022 WL 223878, at *5 (E.D. Cal. Jan. 25, 2022) (following *Jaras* and finding plaintiff failed to allege concrete

injury where plaintiff generally alleged injuries of creditworthiness and chilling effect but not specific harm to "her ability to enter a transaction in the past or imminent future").

Because Plaintiff has not alleged an injury in fact for either of his FCRA claims, this Court lacks subject matter jurisdiction over the entire Complaint. Accordingly, the entire Complaint should be dismissed with leave to amend so that Plaintiff may allege facts to establish Article III standing. *See Kent v. Century Manor Tr. Ltd*, 2019 WL 5596481, at *3 n.3 (E.D. Cal. Oct. 30, 2019) (dismissing complaint as to both moving and non-moving defendants "[b]ecause a jurisdictional defect deprives the court of the authority to consider the case"), *report and recommendation adopted*, 2020 WL 704614 (E.D. Cal. Feb. 12, 2020).

### C. Defendant BMO's Motion to Dismiss

Defendant BMO argues Plaintiff fails to plead the elements of a § 1681s-2(b) claim because Plaintiff has not alleged that the credit report contains an inaccuracy, that Defendant made an unreasonable investigation, that Defendant acted willfully or negligently, or that Plaintiff suffered actual damages. Def. Mot. at 9-11.

15 U.S.C. § 1681s-2 establishes the "[r]responsibilities of furnishers of information to consumer reporting agencies." 15 U.S.C. § 1681s-2. As the Ninth Circuit has summarized,

> Section 1681s–2(b) imposes . . . obligations [upon furnishers of information that] are triggered "upon notice of dispute"—that is, when a person who furnished information to a CRA [(credit reporting agency)] receives notice from the CRA that the consumer disputes the information. *See* § 1681i(a)(2) (requiring CRAs promptly to provide such notification containing all relevant information about the consumer's dispute). Subsection 1681s–2(b) provides that, after receiving a notice of dispute, the furnisher shall:
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) ...;
> >
> > (C) report the results of the investigation to the [CRA];
> >
> > (D) if the investigation finds that the information is

> incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i) modify ... (ii) delete[or] (iii) permanently block the reporting of that item of information [to the CRAs].
>
> § 1681s–2(b)(1). These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).

*Gorman*, 584 F.3d at 1154. To state a claim under § 1681s-2(b), a plaintiff must allege they: "(1) found an inaccuracy in their credit report; (2) notified a credit reporting agency of the inaccuracy; (3) the credit reporting agency in turn notified the furnisher of the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of [§ 1681s-2](b)(1)(A)-(E)." *Arnold*, 2023 WL 2088460, at *6 (citation and internal quotation marks omitted). Neither party disputes that Defendant BMO qualifies as a furnisher under the FCRA. The second and third elements are not in dispute, and the Court therefore focuses its analysis on the first and fourth elements, and damages. *See* Def. Mot.

1. <u>Inaccuracy</u>

"[I]nformation is inaccurate for purposes of 15 U.S.C. § 1681s-2(b) where it either is 'patently incorrect' or is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Gorman*, 584 F.3d at 1163). A plaintiff must present a "bona fide dispute" of the reported information. *Gorman*, 584 F.3d at 1163. "If a plaintiff is unable to make a 'prima facie showing of inaccurate reporting,' his or her claim 'fails as a matter of law.'" *Jugoz v. Experian Info. Sols., Inc.*, 2017 WL 2720184, at *3 (N.D. Cal. June 23, 2017) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)).

Here, the Complaint does not sufficiently allege any inaccuracy in Plaintiff's

Experian credit report. Plaintiff raises two purported inaccuracies, both of which fail.

First, Plaintiff claims that the reported BMO tradeline is inaccurate because it reported a "Date of Last Payment" of December 18, 2024, occurring after the account had allegedly been charged off on April 12, 2023. Compl. ¶ 10-11. Plaintiff thus asserts that the recording of a payment date after a charge-off date is inherently contradictory. *Id.* Plaintiff is incorrect. A "charge off" is "the declaration by a creditor (usually a credit card account) that an amount of debt is unlikely to be collected. This occurs when a consumer becomes severely delinquent on a debt." *Williams v. Equifax Info. Servs., LLC*, 2019 WL 3243737, at *3 n.3 (C.D. Cal. May 6, 2019). A "charged off" account "means the bank changed the outstanding debt from a receivable to a loss in its own accounting books." *In re Anderson*, 884 F.3d 382, 385 (2d Cir. 2018). "Thus a consumer may, in fact, still continue to pay down a debt that has been marked as charged-off." *Ford v. TransUnion LLC*, 2025 WL 3083075, at *2 (E.D. Mich. Nov. 4, 2025). Accordingly, the fact that a payment was recorded after the BMO tradeline was charged off does not create an inherent contradiction or inaccuracy with respect to Plaintiff's credit report. *See id.* ("Plaintiff's allegation that his Transunion report shows that he continued to make payments on his debt does not suffice to state a claim of either 'patently incorrect' or 'misleading' information."); *Frazier v. Trans Union, LLC*, 2020 WL 1230622 (C.D. Cal. Jan. 9, 2020) (finding no alleged inaccuracy in report reflecting monthly payments on tradeline that was charged off and closed because plaintiff failed to allege she could not satisfy remaining debt obligation through monthly payments).

In opposition, Plaintiff argues that the "Date of Last Payment" results in an inaccuracy because the collateral on the BMO tradeline was repossessed in August 2023, prior to the "Date of Last Payment" on December 18, 2024, which "creates a facial inconsistency suggesting ongoing payment activity after charge-off and repossession" and which "can mislead creditors into believing the account remained active or that payments were made post-default." Pl. Opp'n at 2 (ECF No. 22-1). This argument fails for two reasons. First, Plaintiff did not allege this purported inaccuracy, based on an

alleged repossession of collateral, in the Complaint. *See* Compl. New allegations and claims cannot be pleaded in an opposition, and the Court's review on this motion to dismiss focuses on the allegations and claims pleaded in the Complaint. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Second, even if the Court were able to consider Plaintiff's new theory in his opposition, dismissal of the Complaint is still warranted because Plaintiff has not established how the alleged repossession creates a "facial inconsistency" with a later payment date. For example, nowhere does Plaintiff allege that the repossession satisfied the entire balance of his loan, especially where Plaintiff does not dispute the accuracy of the reported "past due balance of $57,265." Compl. ¶ 9. Thus, Plaintiff fails to allege an inaccuracy based on the date of repossession of collateral and the reported "Date of Last Payment."

The second inaccuracy Plaintiff alleges is that the failure to "disclos[e] any adjudicated liability or supporting documentation" renders "[t]he reporting of the account as a collectible charge-off balance . . . misleading and materially inaccurate." Compl. ¶ 12. This claim is not coherent as to the element of inaccuracy. The Complaint does not challenge whether the BMO tradeline is accurately classified as charged off. To the extent Plaintiff challenges the legal validity of the debt when he refers to the purported lack of "adjudicated liability" or "the legality of the repossession," Compl. ¶¶ 12, 16, Plaintiff still does not allege a factual inaccuracy. "A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)." *Williams v. Equifax Info. Servs., LLC*, 2019 WL 3243737, at *5 (C.D. Cal. May 6, 2019) (quoting *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 1873419, at *5 (11th Cir. Apr. 25, 2019)).

Further, although the Complaint alleges Plaintiff "challenged the account's verifiability due to the lack of underlying documentation," this allegation is vague and does not indicate Plaintiff challenged the accuracy of any statement reported in the BMO tradeline. Therefore, the fact that the Experian credit report lacked "supporting documentation" for an otherwise undisputed statement does not make that statement

"patently incorrect" or "misleading." It appears Plaintiff is instead attacking the reasonableness of Defendant's investigation. But this attack fails because "before a court considers the reasonableness of the [furnisher]'s procedures, the consumer must make a prima facie showing of inaccuracy in the [furnisher]'s reporting." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citation and internal quotation marks omitted). "This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play." *Id.* Thus, Plaintiff has not presented a bona fide dispute regarding the characterization that the BMO tradeline was charged off. *See Williams v. Westlake Fin. Servs., Inc.*, 2025 WL 2927047, at *4 (E.D. Cal. Oct. 15, 2025) (dismissing FCRA claim because complaint relied on "circular logic" that defendant's continued reporting of late payments and increased debt rendered the reported information inaccurate).

2. Reasonableness of Investigation

Where "Plaintiff does not allege any of the information on his credit report was inaccurate . . . the allegation that the information remained on Plaintiff's credit report after submitting his disputes is not sufficient to raise an inference that Defendant failed to conduct a reasonable investigation." *Spellacy v. Wells Fargo Bank, N.A.*, 2021 WL 7285997, at *6 (C.D. Cal. Aug. 4, 2021). "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman*, 584 F.3d at 1161.

Here, because Plaintiff has not alleged the threshold element of inaccuracy, the Court declines to address the sufficiency of Plaintiff's allegations as to the reasonableness of Defendant BMO's alleged investigation. *See Gross*, 33 F.4th at 1251.

3. Damages

The FCRA imposes different penalties depending on the state of knowledge in which the violation occurred. A consumer reporting agency or credit furnisher that negligently violates its obligations to a consumer under the FCRA is liable to the consumer for the consumer's actual damages, plus costs and attorney's fees. 15 U.S.C.

§ 1681o. "'Negligence' is 'the failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation . . .'" *Moran v. Screening Pros, LLC*, 2020 WL 4724307, at *5 (C.D. Cal. July 30, 2020) (quoting Black's Law Dictionary (11th ed. 2019)). A consumer reporting agency or credit furnisher that willfully violates its obligations to a consumer under the FCRA is liable to the consumer for the consumer's actual damages, costs and attorney's fees, and, potentially, punitive damages. 15 U.S.C. § 1681n. "A FCRA violation is willful if it is made either knowingly or with reckless disregard for the requirements imposed under the Act." *Moran*, 2020 WL 4724307, at *4 (citing *Safeco*, 551 U.S. at 56-60). An entity under the FCRA acts in "reckless disregard" where its actions involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quoting *Safeco*, 551 U.S. at 68).

Here, because the Complaint has no allegations regarding Defendant's willfulness, Plaintiff has not pleaded liability for a willful FCRA violation. Further, the Complaint does not establish a § 1681s-2(b) claim based on negligence because it has not sufficiently alleged actual damages. As discussed, Plaintiff's sole harm alleged in the Complaint is that his FICO score reported by Experian is lower relative to the score reported by other credit reporting agencies. Compl. ¶¶ 19-20. "[A] diminished credit score, standing alone, does not represent actual damages." *Rara v. Experian Info. Sols., Inc.*, 2017 WL 1047020, at *9 (N.D. Cal. Mar. 20, 2017) (collecting cases); *see also Graham v. Sunnova Energy Interntional, Inc.*, 2024 WL 871858, at *10 (E.D. Cal. Feb. 28, 2024). Accordingly, Plaintiff fails to state a claim for negligent FCRA violation.

The Court further notes that Plaintiff has sought relief only in the form of declaratory and injunctive relief, and costs. Compl. at 7. As other district courts have held, "injunctive and declaratory relief is not available to private plaintiffs under the FCRA." *White v. Navy Fed. Credit Union*, 2018 WL 3729510 (S.D. Cal. Aug. 3, 2018) (collecting cases). Accordingly, to the extent Plaintiff seeks declaratory and injunctive relief for his § 1681s-2(b) claim, this also constitutes grounds for dismissal.

/ / /

**D. § 1681i Claim Against Defendant Experian**

"[15 U.S.C. § 1681i] provides that consumer reporting agencies such as Experian must 'conduct a reasonable reinvestigation' when an item in the consumer's credit file 'is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute.'" *Warner v. Experian Information Solutions, Inc.*, 931 F.3d 917, 920 (9th Cir. 2019) (emphasis in original) (citing 15 U.S.C. § 1681i(a)(1)(A)). "To state a claim under Section 1681i, Plaintiff must properly allege that: (1) his consumer file contained prima facie inaccurate or incomplete information; (2) he notified Defendant of the alleged inaccuracy; (3) Defendant failed to respond or conduct a reasonable investigation of the disputed item; and (4) Plaintiff suffered damages as a result of Defendant's conduct." *Brignac v. Experian*, 2025 WL 3691949, at *6 (C.D. Cal. Dec. 11, 2025) (citation and internal quotation marks omitted).

"A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981). Accordingly, on June 18, 2026, the Court issued a minute order providing notice to Plaintiff that it may sua sponte dismiss Plaintiff's claim against Defendant Experian for failure to state a claim pursuant to Rule 12(b)(6). 6/18/2026 Order (ECF No. 36). The Court provided Plaintiff an opportunity to respond by submitting a written opposition. *Id.* Plaintiff filed this response on July 8, 2026. Pl. Resp. (ECF No. 37).

Plaintiff's response fails to establish that he has stated a claim under § 1681i. First, as to inaccuracy, Plaintiff argues that a contradiction exists in his credit report because the "Date of Last Payment" on the BMO tradeline, which is December 18, 2024, is later than the "Date Last Active," which is March 1, 2024. Pl. Resp. at 3-4. However, because this inconsistency was not expressly alleged in the Complaint, it has no bearing on the Court's Rule 12(b)(6) analysis. *See* Compl.; *Schneider*, 151 F.3d at 1197 n.1. To the extent Plaintiff argues that the inaccuracy consists of "reporting a $57,265.00

charged-off balance alongside an internally inconsistent payment history," (ECF No. 37 at 5), this argument fails for the reasons explained above. Second, Plaintiff fails to establish resulting damages. Plaintiff argues that his creditworthiness was impaired, that he incurred out-of-pocket expenses to resolve the alleged inaccuracy, and that the inaccurate credit file itself constitutes damages. Pl. Resp. at 5, 7. Again, these generalized assertions are unavailing. *See Gadomski v. Patelco Credit Union*, 2020 WL 1433138, at *4 (E.D. Cal. Mar. 24, 2020) ("Plaintiff's alleged damages regarding her creditworthiness and out-of-pocket expenses are not sufficient to show actual damages."). Thus, Plaintiff also fails to establish the element of damages for his § 1681i claim.

Accordingly, because Plaintiff has not successfully pleaded elements that overlap with the necessary elements of a § 1681i claim, namely, inaccuracy and damages, the Court also recommends dismissal of Plaintiff's § 1681i claim against Defendant Experian for failure to state a claim. Accordingly, the entire Complaint should be dismissed for failure to state a claim.

**E. Leave to Amend**

Upon dismissal of any claims, the court is to tell a pro se plaintiff of the complaint's deficiencies and provide an opportunity to cure such defects. *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss without leave to amend. *Cato*, 70 F.3d at 1105-06.

Here, because it is conceivable that the defects in the Complaint can be cured and due to Plaintiff's pro se status, Plaintiff should be given leave to amend. Plaintiff is granted leave to amend his Complaint to the extent he can allege facts that sufficiently plead his claims. The allegations of the amended complaint must be set forth in

sequentially numbered paragraphs, with each paragraph number being one greater than the one before, each paragraph having its own number, and no paragraph number being repeated anywhere in the complaint. Each paragraph should be limited "to a single set of circumstances" where possible. *See* Fed. R. Civ. P. 10(b). Forms are available to help plaintiff organize his complaint in the proper way. They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

Plaintiff is warned that a formulaic recitation of the elements of a cause of action does not suffice to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-57 (2007); Fed. R. Civ. P. 8. To state a claim on which relief may be granted, a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If Plaintiff elects to file an amended complaint, it should be titled "First Amended Complaint" with reference to the appropriate case number. An amended complaint must be complete in itself without reference to any prior pleading. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); E.D. Cal. Local Rule 220. If Plaintiff does not timely file an amended complaint, this will result in a recommendation that this action be dismissed. **Plaintiff is instructed not to file a First Amended Complaint until after the district judge issues an order on these findings and recommendations. Any amended complaints filed before the district judge rules on these findings and recommendations will be stricken.**

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Plaintiff's oppositions at ECF Nos. 18 and 19 are DISREGARDED.
2. The Clerk of the Court shall file Plaintiff's opposition to Defendant BMO's motion to dismiss located at ECF No. 22-1, as a separate docket entry.

Further, based upon the findings above, it is RECOMMENDED that:

1. Defendant BMO Bank N.A.'s motion to dismiss (ECF No. 9) be GRANTED; and

2. Plaintiff's Complaint (ECF No. 1) be DISMISSED without prejudice; and

3. Plaintiff be given thirty (30) days from the adoption of these findings and recommendations to file an amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: July 14, 2026

Chi Soo Kim
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, simm.0347.26